UNITED STATES of America

v.

Walter I. DOBAR.

UNITED STATES of America

v.

Walter I. DOBAR, John Dana Boardman, Marcel Rene Blanco, and James Hamilton Pickren.

UNITED STATES of America

v.

James Hamilton PICKREN, John Dana Boardman, and Marcel Rene Blanco.

Crim. Nos. 1378, 1379, 1383.

United States District Court
M. D. Florida,
Orlando Division.

Feb. 21, 1963.

Arnold Levine, Asst. U. S. Atty., Tampa, Fla., for United States.

J. Russell Hornsby, Orlando, Fla., for defendant Walter I. Dobar.

Chester Bedell, of Bedell, Bedell & Dittmar, Jacksonville Fla., for defendants John Dana Boardman, Marcel Rene Blanco and James Hamilton Pickren.

YOUNG, District Judge.

Pursuant to due notice, these cases were heard together on various Motions of Defendants, including Motions to Dismiss or Quash the Indictment in each case.

In Case No. 1383-Orl-Cr., James Hamilton Pickren, John Dana Boardman and Marcel Rene Blanco are charged in a 12-Count Indictment with twelve separate violations of Title 41 United States Code, Sections 51 and 54 (the "Anti-Kickback Statute"). Section 51, as effective in 1958 and 1959 (the years of the alleged offenses), prohibited:

> "The payment of any fee, commission, or compensation of any kind or the granting of any gift or gratuity of any kind, either directly or indirectly, by or on behalf of a subcontractor, as defined in section 52 of this title, (1) to any officer, partner, employee, or agent of a prime contractor holding a contract entered into by any department, agency, or establishment of the United States for the furnishing of supplies, materials, equipment or services of any kind whatsoever, on a cost-plus-a-fixed-fee or other cost reimbursable basis; or to any such prime contractor or (2) to any officer, partner, employee, or agent of a higher tier subcontractor holding a subcontract under the prime contract, or

to any such subcontractor either as an inducement for the award of a subcontract or order from the prime contractor or any subcontractor, or as an acknowledgment of a subcontract or order previously awarded * * *."

In Count One it is alleged that the Defendants:

" * * * did knowingly and directly pay to Walter I. Dobar who, as the defendants well knew, was then and there an employee and agent of The Martin Company, which then and there was a prime contractor holding contracts entered into with the United States for the furnishing of supplies, materials, equipment and services on a cost plus fixed fee basis, the approximate sum of $1,-067.95, said sum being a fee, commission, gift, gratuity and compensation paid by and on behalf of Commercial Chemists, Inc., a subcontractor, as defined in Section 52, Title 41, United States Code, of the aforesaid prime contractor, as an inducement for the award of subcontracts and orders to said subcontractor, and as acknowledgment of subcontracts and orders previously awarded to said subcontractor, by the aforesaid prime contractor; in violation of Title 41, United States Code, Sections 51 and 54."

The other eleven counts are each identical to Count One except that each count alleges a different date on which the offense was allegedly committed and a different amount of alleged payment.

Examination of the legislative history and relevant decisions has caused this Court to conclude that the Indictments are fatally defective for a reason not specifically advanced by any of the counsel for Defendants in their arguments in support of their Motions to Dismiss or Quash.

The purpose of enacting Sections 51 through 54, of Title 41 United States Code, is set forth in a letter dated March 22, 1960, from the Comptroller General of the United States addressed to the Speaker of the House of Representatives, which letter was made a part of House Report No. 1880 concerning H.R. 12604 of the 86th Congress which amended the original 1946 Statute. That letter, in part, stated:

"The General Accounting Office, in auditing certain World War II cost-plus-a-fixed-fee contracts, found the existence of conditions involving the payment by certain firms of commissions or fees to persons employed in the purchasing departments of prime contractors who were performing cost-plus-a-fixed-fee contracts for the Government, for the purpose of obtaining subcontracts or orders from the prime contractor. The Government ultimately bore the costs of the kickbacks because under the terms of the prime contract, it was required to reimburse the contractor for the cost of all subcontracts. However, there was no specific statutory remedy for recovery by the Government of the amount of the kickback, and there was serious doubt as to the adequacy of common law remedies.

"The General Accounting Office brought the existence of such conditions to the attention of appropriate committees of the Congress, resulting in open hearings which confirmed our findings. On October 5, 1943, the Comptroller General issued a special report to the Congress recommending corrective legislation, which was adopted substantially as suggested." U.S.Code Congressional and Administrative News 1960, p. 3293.

Since its enactment in 1946, the "Anti-Kickback Statute" has received judicial consideration and interpretation. In United States v. Barnard, 255 F.2d 583, on page 588 (10th Cir., 1958), the Court said:

"Section 51 * * * is limited in reach to kickbacks given and received in connection with contracts on a cost-plus-a-fixed-fee or other

cost reimbursable basis. And therefore unless the prime contract awarded to General Motors was of that kind, the indictments were fatally infirm and were providently dismissed."

It is obvious that the purpose of Section 51 was to keep the Federal Government from indirectly paying for kickbacks or inducement payments for the awarding by a prime contractor of a subcontract on a cost-plus-a-fixed-fee basis. Two of the essential and indispensable elements of the offense created by Section 51 are, therefore:

1. The existence of a cost-plus-a-fixed-fee contract with the United States of America;

2. The making or receiving of a payment prohibited by Section 51 *in connection with such a contract.*

I am of the opinion that it was neither the purpose of the law nor the intent of Congress to prohibit the making or receiving of so-called "kick-back" payments, except in connection with a contract with the Federal Government on a cost-plus-a-fixed-fee or other cost reimbursable basis. Such payments made in connection with a non-federal cost-plus-a-fixed-fee contract were not prohibited by Section 51; nor were such payments prohibited by Section 51 (in 1958 and 1959) in connection with a federal non-negotiable fixed fee contract.

It follows, then, that such a payment in connection with either a non-federal contract or a federal fixed fee contract would not have been prohibited by Section 51 even though simultaneously the prime contractor had a federal contract on a cost-plus-a-fixed-fee or other cost reimbursable basis. Although kickback payments in connection with solely private contracts may be illegal under the laws of some other jurisdiction, I do not believe such payments come within the scope of Section 51, Title 41 United States Code. Section 51 was not intended to cover payments in connection with a private fixed fee contract to a contractor in Miami just because that contractor also happened to have a cost-plus-a-fixed-fee contract with the United States Government in an area remote from Miami, say, in Alaska.

Each of the twelve counts in the instant case, No. 1383–Orl–Cr., merely alleges payment by the Defendants to an employee and agent of "a prime contractor holding contracts entered into with the United States * * * on a cost plus fixed fee basis * * * as an inducement for the award of subcontracts and orders * * * and as acknowledgment of subcontracts and orders previously awarded * * *" There is no allegation that the subcontracts sought or previously awarded were subcontracts of a federal cost-plus-a-fixed-fee contract. For aught that is alleged the circumstances assumed in the Miami-Alaska hypothetical above could fit the allegations of the indictment in Case No. 1383–Orl–Cr. So that each and every one of the counts in that case is defective.

In Case No. 1378–Orl–Cr., Defendant Walter I. Dobar is charged in twelve counts with receiving twelve separate payments from James Hamilton Pickren, John Dana Boardman and Marcel Rene Blanco, the Defendants in Case No. 1383–Orl–Cr. In Case No. 1379–Orl–Cr., all four Defendants are charged with conspiracy to violate Sections 51 and 54 of Title 41, United States Code. For the same reasons as set forth above concerning Case No. 1383–Orl–Cr., I also find each and every one of the counts in the indictments in Cases Nos. 1378 and 1379–Orl–Cr. also fatally defective.

In view of the holding herein it is unnecessary to pass upon the other pending Motions.

Judgment dismissing the Indictments in the three above-entitled cases will be entered.